**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 4 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

EDWARD LEE ROSS,

     Defendant - Appellant.

No. 02-1539
(D.C. No. 02-CR-201-RB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

Defendant Edward Lee Ross was charged with violating 18 U.S.C.

§ 922(g)(1) for being a felon in possession of a firearm.  After entering a

conditional plea of guilty, he now appeals the district court's denial of his motion

to suppress evidence seized during a search of his residence, arguing that the

warrant was issued in reliance on evidence tainted by a violation of his Fifth

Amendment rights.  Defendant claims that the tainted evidence cannot be

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

validated by applying the independent source rule and that the warrant's flaws cannot be excused under the good faith exception recognized in United States v. Leon, 468 U.S. 897 (1984).

Pursuant to the Supreme Court's recent decision in United States v. Patane, --- U.S. ---, 124 S.Ct. 2620 (2004), we hold that the law enforcement agents' failure to give Defendant his Miranda warnings did not taint the nontestimonial evidence developed as a result of Defendant's unwarned but voluntary statements.

**Background**

Defendant was pulled over by Colorado Springs Police Officer Creighton Brandt on the afternoon of April 17, 2002, when Officer Brandt noticed, during a routine patrol, that the Defendant's van bore an expired registration tag. When Defendant was unable to produce a driver's license, vehicle registration, or proof of insurance, Officer Brandt decided to impound the vehicle and escorted Defendant to his patrol car, where the Defendant was then confined in the back seat. Officer Brandt did not advise Defendant that he was under arrest, and he did not give Defendant his Miranda warnings.

Officer Brandt asked Defendant his identity, and he responded with the name and birth date of his brother, Donald Dell Ross. The license records for Donald Dell Ross described a man four inches shorter and 110 lbs. lighter than

the Defendant, and when challenged by Officer Brandt, Defendant admitted he had lied and proceeded to provide his true identity.

After deciding to impound Defendant's van, Officer Brandt called for backup to assist in an inventory search of the vehicle. When help arrived, he began the inventory of Defendant's vehicle and discovered a metal ammunition box containing live shotgun shells. Officer Brandt returned to his patrol car and asked Defendant "where the shotgun was that went with the shells." When Defendant replied that the weapon was at his office, Officer Brandt asked Defendant whether he had any prior felony convictions. Defendant responded that he did, and Officer Brandt alerted the Gun Interdiction Unit, a task force comprised of federal agents from the Bureau of Alcohol, Tobacco and Firearms and of detectives from the Colorado Springs Police Department and the El Paso County Sheriff's Office.

When the officers from the Gun Interdiction Unit ("GIU") arrived, they again questioned Defendant about his criminal record. At no time was Defendant informed that he was under arrest, and none of the officers read him his Miranda rights. Defendant stated that he had two felony convictions in state court, both more than ten years old. The officers from the Gun Interdiction Unit left the scene after concluding their conversation with the Defendant, and Officer Brandt

issued several citations to the Defendant, returned the shotgun ammunition to him, and released him.

After returning to his office from the site of Defendant's traffic stop, ATF Agent Meryeni, a member of the Gun Interdiction Unit, retrieved Defendant's criminal history from the FBI's National Crime Information Center (NCIC), and discovered that Defendant had four prior felony convictions — two in state court, and two in federal court. All officers involved in the case admit that their continued investigation into Defendant's criminal history was prompted by Defendant's admissions that he had a felony record.

The following morning, Detective Andrews of the Colorado Springs Police Department, a member of the GIU team that interrogated Defendant at the previous afternoon's traffic stop, prepared applications for search warrants for Defendant's impounded van and for Defendant's residence, including Defendant's criminal history as part of the applications. The warrants were issued by a county judge, and the subsequent search of Defendant's residence produced 16 firearms which Defendant later admitted he owned.

Defendant sought to suppress the items found during the search of his van and his house, arguing that the warrants were invalid because they rested on evidence obtained in violation of his Miranda rights and because the applications did not provide probable cause for the searches. He also challenged Officer

Brandt's initial search of the impounded van as not a genuine, properly documented inventory search. The district court denied Defendant's suppression motion, and Defendant entered a conditional plea of guilty and was sentenced to six months' imprisonment. Defendant now appeals the district court's suppression ruling, challenging only the validity of the warrant that authorized the search of his house.

**Discussion**

Defendant's argument on appeal hinges on one critical premise: that his statements regarding his criminal history, procured in custodial interrogation without the warnings required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), prompted the law enforcement agents to research his criminal history and therefore tainted that criminal history information as fruit of the poisonous tree. <u>See</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 485 (1963). The parties' briefs and oral arguments took this proposition as the baseline and disputed whether the government's prior possession of Defendant's criminal history information in the NCIC showed the existence of an "independent source" for that evidence and whether any shortcomings in the information presented in the warrant application could be excused by <u>Leon</u>'s good faith rule. After the Supreme Court's intervening decision in <u>Patane</u>, however, that premise — that we must exclude

such nontestimonial evidentiary fruit of un-Mirandized but voluntary statements — is no longer valid.

In Patane, the Supreme Court overruled our decision in United States v. Patane, 304 F.3d 1013 (10th Cir. 2002), where we relied on the Court's declaration in Dickerson v. United States, 530 U.S. 428, 444 (2000), to hold that the physical fruits of a suspect's un-Mirandized but voluntary statements should be excluded as fruit of the poisonous tree. 124 S.Ct. at 2626. Writing for the three-justice plurality, Justice Thomas noted that "the core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." Id. "Introduction of the nontestimonial fruit of a voluntary statement," the plurality concluded, "does not implicate the Self-Incrimination Clause. The admission of such fruit presents no risk that a defendant's coerced statements (however defined) will be used against him at a criminal trial." Id. at 2630.

Justices Kennedy and O'Connor concurred, agreeing with the plurality that Dickerson did not undermine the Court's prior decisions finding evidence obtained as a result of an unwarned interrogation to be admissible. Id. at 2630-31. Justice Kennedy further observed that the physical evidence obtained as a result of an unwarned statement presented an even stronger case for admissibility than the situations approved of in the Court's precedents. "Admission of

nontestimonial physical fruits ... , even more so than the postwarning statements to the police in [Oregon v.] Elstad and Michigan v. Tucker, does not run the risk of admitting into trial an accused's coerced incriminating statements against himself." Id. at 2631 (citations omitted).

The criminal history information presented to the magistrate in the warrant application in this case came not from Defendant's unwarned statements to the police but from the NCIC database, which contains the records of Defendant's prior convictions. The fact that this nontestimonial evidence was examined only after the officers were prompted to do so by Defendant's statements does not, under Patane, make the criminal history information the poisoned fruit of those un-Mirandized statements.

**Conclusion**

Since we hold that the officers' violation of Miranda did not taint Defendant's criminal history information as fruit of the poisonous tree, we decline to address the parties' arguments on the independent source doctrine or on the

reach of <u>Leon</u>'s good faith rule.  The judgment of the district court is

AFFIRMED.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge